JENNIE LEWIS v. SCOTIA BUILDING & LOAN ASSOCIATION.

FILED NOVEMBER 7, 1894.   No. 5786.

Review: FINDINGS AND JUDGMENT: VARIANCE. Where the facts admitted by the pleadings and established by the special findings of the trial court are at variance with its final judgment, such judgment in an error proceeding must be reversed.

ERROR from the district court of Greeley county.  Tried below before COFFIN, J.

*James Lewis, G. C. Wright, E. E. Wright,* and *J. R. Hanna,* for plaintiff in error.

*T. J. Doyle, contra.*

RYAN, C.

There was submitted with this case a motion to quash the bill of exceptions, which will not be passed upon, because no necessity exists for a ruling thereon in the view which we take of the pleadings and special findings made. In the petition filed by the appellant in the district court of Greeley county, it was alleged that the defendant was organized as a corporation, under the laws of Nebraska, on or about June 29, 1885, and that plaintiff at that time signed for and became the owner of one share of its stock; that afterwards plaintiff became the owner of other shares of stock; that plaintiff gave notice to the said corporation, as by its constitution and by-laws she was required to do for that purpose, of her withdrawal of her stock, and that more than thirty days have elapsed since said notice was given, but that defendant has refused to permit such withdrawal and has refused an accounting in respect to plaintiff's said shares of stock.   Following these averments was this language: "That this plaintiff has paid into said corporation or association, as weekly dues on the first share above mentioned, 233 weeks at forty cents per week, making the sum of $93.20, upon which this plaintiff is entitled to interest at the rate of six per cent, making the sum of $15.38, and in all making the sum of $108.58 now due this plaintiff from said corporation or association upon the first above mentioned share; that there has been paid by this plaintiff to the above S. K. Paxton, a party from whom she alleged that she had purchased her other shares

of stock, into said corporation or association as weekly dues thereon upon her two remaining shares above mentioned, for 215 weeks at eighty cents per week, making the sum of $172, upon which this plaintiff is entitled to interest at the rate of six per cent, making the sum of $28.40, and making in all the sum of $200.40 due this plaintiff from said corporation or association upon her two shares assigned to this plaintiff by S. K. Paxton above named; that said corporation, the Scotia Building & Loan Association, is indebted to this plaintiff upon the shares of stock above mentioned the full sum of $308.99, and that the same is now due and owing to this plaintiff upon the said three shares of stock in the said corporation or association, and that she is now the lawful owner and holder of the same." There was a prayer for judgment for the sum of $308.99, with interest and costs of suit. The defendant answered, admitting that it was a corporation as alleged in the petition, and that plaintiff signed for and became the owner of one share of stock in said association, and became a member thereof on or about the 29th day of June, 1885. Following the above admissions were averments as follows:

"Defendant, for further answer, avers that on or about the 8th day of October, A. D. 1885, plaintiff redeemed and purchased her said share of stock from said association in the manner provided in the constitution and by-laws of said association for so doing, viz., there being $200 accumulated in the treasury of said association, one share of the capital stock of said defendant was offered for sale at public auction, and one J. M. Marsh, a member of said association, bid therefor a premium of $57 and said share was declared sold to said Marsh, whereupon said Marsh, at the request of plaintiff, transferred his said bid to plaintiff; whereupon plaintiff, in pursuance of the by-laws and constitution of said association, executed and delivered to defendant her bond in the sum of $200 for the payment of

said share of stock so redeemed by her, payable in weekly installments of forty cents principal and thirty cents interest. * * * To secure the payment of said bond said plaintiff, in conjunction with her husband, James Lewis, executed to defendant a mortgage deed upon the premises therein described. * * * Upon the execution and delivery of said bond and mortgage, defendant paid to plaintiff said sum of $200 in full, including said $57 premium bid therefor, in the manner following, viz.: Defendant executed and delivered to plaintiff its order upon the treasurer of said association in the words and figures following, viz.:

"'$143.                 Scotia, Neb., Oct. 8, 1885.

"'Treasurer Scotia Building & Loan Association, pay to Jennie Lewis, or order, $143, account of one share redeemed at $28\frac{1}{2}$ per cent.        W. L. Johnson, *President.*

"'J. M. Marsh, *Secretary.*                     No. 9.'
which said order was duly honored and paid by said treasurer of said association, and indorsed as follows: 'Received payment, James Lewis.' At the time of indorsing said order James Lewis was the duly authorized and acting agent of plaintiff, and as such indorsed said order; defendant therefore avers that in the manner foregoing defendant paid to plaintiff in full said share of stock, and plaintiff's interest therein became extinguished except as a debtor of said association.

"Defendant, for further answer, says that after the execution of said bond and mortgage plaintiff became in arrears in payment of her weekly dues and interest for more than three months, and defendant commenced an action of foreclosure against said plaintiff on said bond and mortgage and caused summons to be served upon plaintiff, and thereafter plaintiff went to the clerk of said court in person and paid the costs of said action, and to the treasurer of said association and paid her arrears, weekly dues, interest, and fines, and kept the pass-book furnished by

defendant containing a record of the payments of the same, and has at all times since the redemption of said share of stock recognized the redemption thereof and said obligation to pay the same. Wherefore defendant avers plaintiff is estopped from denying the redemption of said share of stock; that said share was the only share of stock owned or possessed by said plaintiff in defendant at the time of the redemption thereof.

"Defendant, for further answer to said petition, denies that S. K. Paxton transferred or sold two shares of stock in said association to plaintiff, and alleges the fact to be that one James Lewis, husband of plaintiff, bought at the date set forth in said petition from S. K. Paxton and G. C. Paxton real estate in the village of Scotia, Nebraska, which said real estate was subject to and incumbered by a mortgage in favor of defendant to secure the payment of five shares of stock redeemed by said Paxton, and said James Lewis, as an incident to the purchase of said property and as part consideration therefor, assumed the payment of said mortgage indebtedness to defendant and took an assignment of ten shares of stock in defendant, all of which had been redeemed or assigned to defendant as security for said shares redeemed prior to the purchase of said property and the assignment thereof to said James Lewis. At the date of purchase of said premises and taking assignment of said shares of stock, said James Lewis was the owner and holder of two shares of stock in defendant, and each member is limited to ten shares of stock, and to avoid a violation of said by-laws, said James Lewis directed two shares of said stock assigned to Jennie Lewis, which was done. Said two shares of stock so assigned to said Jennie Lewis, plaintiff, had been fully redeemed by and paid to Paxton long prior to the transfer thereof, and the bond of said Paxton secured by mortgage deed upon said premises purchased by said James Lewis, executed to defendant; that plaintiff had no knowledge of the assignment of said shares to her at the

time same was made and paid no consideration therefor, and upon the part of assignee it was simply assuming the payment of a debt to the defendant for shares redeemed before the same were assigned. Said association has not yet paid out in the manner provided by its by-laws and constitution by a payment of all its shares of stock."

The answer also contained a further allegation as to losses sustained in which plaintiff should participate, as well as a general denial of all allegations not admitted or qualified. To this answer there appears to have been no reply. Upon these issues the parties, having waived a jury, submitted the case to the district court, and on the 4th day of December, 1891, said court made a finding and judgment for defendant and overruled plaintiff's motion for a new trial. There was afterwards, on January 6, 1892, special findings of fact made by the court and filed in the case which, as no objections were made thereto, we shall consider as properly in the record. These special findings were as follows:

" First—Did the plaintiff become the legal owner of one share of stock in the association on or about the 29th day of June, 1885?

"Ans. Yes, about that date.

"Second—If the plaintiff did own one share of stock in said association, did she transfer or redeem the same? If so, when, how, and to whom?

"Ans. Yes, she redeemed it. Money paid to her agent, James Lewis, and which fact she has since also ratified about July 27, 1887.

" Third—Did the plaintiff at any time own two shares of stock in said association known as the Paxton shares; and if so, when, how, and to whom do you find she transferred or redeemed them, if you find that she transferred or that they were redeemed?

"Ans. Were placed in her name because James Lewis could not hold; they were at the time pledged; she did not pay or pledge, and they were afterwards turned in by

James Lewis to pay debt for which they were pledged; she paid no money on them.

" Fourth—Did the plaintiff give notice of her desire to withdraw from the association as provided by its by-laws, thirty days before the commencement of this action ?

"Ans. I find she did.

" Fifth—How much money, if any, do you find that the plaintiff paid to said association, and the amount paid on each share?

"Ans. About $100 on the two shares secured on her property.

" Sixth—Was the plaintiff at the time she commenced this action the owner, or did she have any interest in the shares of the stock of the building and loan association; and if so, what was the value of such interest ?

"Ans. She owns the share secured on her property and which has been paid out, and she received on it $170, and has paid on it about forty cents per week from June 29, 1885, to October 5, 1885, and forty cents weekly dues and thirty cents weekly interest from October 12, 1885, to about July 29, 1889, and eighty cents dues and sixty cents weekly interest from August 5, 1889, to September 29, 1890, and the main portion of the payment was her money. It was to the extent of $100, possibly a little over that sum. She and her husband, James Lewis, paid all, or nearly all, money to the association without separation or distinguishing any fund from another, if any special fund existed, and it is quite hard to tell from the evidence the plaintiff's intention in regard to it further than she desired to pay the loan secured on her premises."

The above liberal quotations are made from the petition and answer, followed by the special findings of the court, that it may be made to appear, first, what facts were admitted, and, second, upon each of the disputed facts, what was the judgment of the court.   These two classes of facts having been settled, it is not difficult to determine the nature

of the transaction between the plaintiff and defendant. In the first place the plaintiff took one share of stock of $200 par value, in exchange for which she seems neither to have paid anything or assumed any obligation. There was afterwards paid into the treasury of the association of accumulations the sum of $200. For the privilege of borrowing this $200 Mr. Marsh, whose signature is attached to the order above quoted as secretary of the association, agreed to pay $57 premium. His right to borrow $200 on payment of this premium was assigned to the plaintiff, who executed her bond for the full amount of the principal, payable in installments of forty cents per week, interest thirty cents per week. To secure the payment of these amounts plaintiff and her husband executed a mortgage upon the plaintiff's real estate for the security of the amounts agreed to be paid. At this point occurs what is called the redemption of her share of stock; that is to say, when plaintiff borrowed the $200 evidenced by her bond, secured by mortgage, and received the amount of said loan less the premium, the defendant, as it is alleged in its answer, "paid to plaintiff in full said share of stock, and plaintiff's interest therein became extinguished except as a debtor of said association." It seems that the real nature of this transaction was that plaintiff gave her bond and mortgage, her husband joining in the latter, for the sum of $200, and actually received the difference between that amount and $57 denominated premium; that is to say, she actually received $143 on her bond for $200, and thenceforward her relations with the defendant wholly ceased, except that she remained its debtor. Ordinarily, we understand that a share of stock entitles the person holding it to a certain interest in the profits of the corporation as well as to a certain right to control its action. In this case, however, the payment for and destruction of the share of plaintiff's stock were simultaneous, and she really acquired nothing but a loan of $200, from which in advance was

taken $57 as a premium. It would be difficult to imagine what results might follow if there shall in the future chance to be a sufficient number of $200 accumulations to redeem all the shares of stock of this building and loan association. Should there not in such event be a residuum of $200 notes secured by mortgage, and if so, by whom would they be held? If by the loan and building association, who could control its affairs and share in its dividends and effects, there being no holders of its stock? Would it not be true that its complete redemption must of necessity extinguish all hope for its immortality? It was pleaded by the defendant that the plaintiff owned no shares of stock except this one; that the two shares of stock which she claims to have obtained from the Paxtons were owned by her husband and taken in her name without her knowledge. These averments are sustained by the third finding of the court, from which it also appears that James Lewis was the real owner and turned in these shares of stock in payment of the amount for which they had been pledged. The transaction as to these two shares of stock certainly does not, under the averments of the answer and findings of the court, create, as against the plaintiff, a personal liability, whatever rights in the future she may be able to show.

We have now to deal with but the first share of stock, and indeed the only share of which plaintiff was ever the owner so far as the record discloses. It would seem from the averments of the answer that plaintiff has paid the full amount which was due on her bond and mortgage, together with all liabilities owing by her to the association in respect of the single share of stock of which, as we have seen, she was the owner, though there is no certainty that this assumption is correct. The finding of the district court is not exact as to the amounts which she has paid as distinguished from what her husband has paid on account of stock held by him. It is clear, however, that, under the pleadings and the special findings as made, there should not

have been, as there was, a general judgment in favor of the defendant. It may be that a fuller disclosure would show that in fact there is nothing due to the plaintiff. On the allegations quoted and special findings made, such does not seem to be the case. It is evident that to the ascertainment whether or not there is anything due from either party to the other, an accounting is indispensably necessary. The judgment of the district court is, therefore, reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.